Next case, Bessinger v. Indian Valley Gardens, Indian Valley Greens. Mr. Carrero. Thank you, Your Honor. You really know how to draw a crowd, I see. Well, that's embarrassing. May it please the Court. Mr. Yadvil. Your Honor, I would like to reserve five minutes for rebuttal, if it's necessary. Yes, sir. The clearest path to the resolution of this case is first the determination of whether or not the contract clause herein dispute the construction of a house within two years was intended as a method of disposition to avoid the Interstate Land Sales Disclosure Act. Court determines that it was. It's the end of the story. We go back down to the district court. If the court decides no, that it wasn't intended to evade the act, then the court will next determine whether or not, in the context of the contract, the agreements of sale to build these homes, was there an unconditional obligation on the part of the sellers, the appellees here, to build a house within two years? Now, by way of background, this development, Indian Valley Greens, is what's called an age-restricted development. It had to be 55 years or older to live there. It was marketed as a development of a superior quality, containing. Okay, but we aren't dealing today with the quality of the workmanship. No, we're not. And that's other aspects of the litigation. We read the briefs. We know that. Okay, I understand that you're right. So with respect to the first issue that I raised, whether or not the contract was an attempt to avoid the Interstate Land Sales Disclosure Act, the contract itself in its statement in paragraph 2B says, in compliance with the Interstate Land Sales Disclosure Act, we'll build this house within two years. It's a form of contract, isn't it? There's nothing unusual about that provision. There's nothing wrong with trying to avoid the act either, is there? Well, yes, there is. I mean, I can avoid taxes. I can't evade taxes, but I can avoid taxes. Excuse me. I can write my land sale contract to avoid the Interstate Land Development Act. No, not quite, Your Honor. I just respectfully disagree with that because the opening clause of Section 1702A is unless the disposition is for purposes of avoiding. So while Congress granted developers an enumerated list of exemptions, those exemptions couldn't be used for the purpose of avoiding. Now, here, the two-year clause you were saying was inserted for purposes of avoiding disclosure under the act. It was what the two-year requirement does is it carves out the requirements that the builder, excuse me, the developer comply with the act. And in this case, I misunderstood, Your Honor. And in this case, the provisions of the act that come into play because of the nature of the development are the anti-fraud provisions. So it's our position that they wanted to avoid the anti-fraud divisions by saying. . . What happens if you're right and you're able to show that the two-year clause was indeed inserted for purposes of avoiding the Disclosure Act? Where does that get you? That gets us back down to the district court because the exemption does not apply. Okay, and if the exemption doesn't apply? Then we go back and we litigate. We litigate under Section 1703A2 the anti-fraud provisions. Were there material misrepresentations? Was there fraud? So that would enable you to get compensation, were you to prevail,  Yes, Your Honor. In federal court as opposed to state court? That's correct, Your Honor. Under the federal statute. Sorry, under the. . . Well, it wouldn't. . . Would it. . . You could get, what, the statutory damages under the Interstate Land Development Act. Correct. And the remainder of your claims against the developer on state law grounds, you could get in federal court. Yes, under the. . . But the Interstate Land Development Act would not cover your claims for inferior workmanship, would it? No, it would not. It would be simply related to the marketing and sale of the properties. That would be the focus of the trial. And the fact that the properties were, in fact, finished within two years, you say is irrelevant? It's irrelevant under case law. I mean, you're after the statutory damages. Yes. And to answer your question, Your Honor, the time of determining the exemption, the applicability of the exemption is at the time that the agreements are entered into. But that's not what the statute was really meant for. The statute was meant for people who are selling lots down in Florida that disappear under high tide. Well, that was one concern of Congress when it was passed. It's been expanded now. It's a disclosure statute. It requires the developer, the seller, to provide certain types of information about the project, what's going on at the project, information a reasonable buyer would think necessary to purchase. That information would be contained in what's a registration statement. That's the requirements under 1703, I believe it's B. Registration is not applicable here. What's applicable in this case because of the nature of the development is whether or not the developer, the sellers, were required to comply with the anti-fraud provisions. And it's our position that they did not. You're basically saying that the two-year provision was inserted in the contract. They're not entitled to the exemption because it was inserted for purpose of evasion. Evading. Is that right? And it says it. The contract says it. Okay. The district court, if I remember correctly, said you never really pled that. You didn't plead that the exemption was for purpose of evasion. We did it. The exemption is the developer's exemption. Correct me then. What was the basis for the district court's decision? The district court went back to your pleadings and it simply wasn't sufficient. It wasn't. Well, that's correct. And the pleadings weren't sufficient because Judge Pratt had determined that, in relying on the case of Atterbury v. Marmoule, that the plaintiff had to plead that the developer intended fraud in putting the provision in the contract. Now, Atterbury stands for the proposition that the plaintiff, in this case, it shifted the burden to the plaintiff. I suppose that's the big issue in this case. Who has the burden of proving purpose of evasion? Well, I would – the two cases that are in tension here is Atterbury v. Marmoule and Gentry v. Harbridge Cottage. And looking at this, although to be, you know, quite frank, not pleading it, I don't believe you need to get to those two cases. I don't need – I don't believe you need to determine what, you know, do we rely on what's the intent of the builder, what's their subjective motives for doing this, or whether or not, as under Gentry, there's a legitimate business reason. By looking at the contract, the contract in and of itself meets the initial clause of 1702. So you – if I understand you correctly, you always go from 12 B.C. You go directly to summary judgment. You could never – your case could never be dismissed on the pleadings. Probably not. We should have had the right to, you know, litigate this and discover and find out what was going on. Whatever happened to Iqbal and Twombly, I mean, does it apply in this case? Would you lay out sufficient facts and circumstances in your complaint that would entitle you to relieve? With respect to? To the Disclosure Act. Well, yes. The pleading is under the Disclosure Act. We did. There was no complaint that the complaint in and of itself was insufficient as it related to the – the requirements under 1703. We had pled sufficient fraud misrepresentation. What was it? What did you plead? We pled under 1703A2 that the representations, the disclosures, the brochures were misleading. They misrepresented the nature of it. The people weren't getting what – in the end, what they were advised they were getting. That wasn't what the issue was. That sounds like a state court case. Well, that may be, but that's – we also have under 17032A, I have that case. Congress has given the plaintiff, the buyer, those rights to prove that case. I see I'm out of time. Okay. We'll get you back on rebuttal. Okay. Mr. Bass. Thank you. May it please the Court, my name is Herbert Bass, and I represent what we call the IVG defendants, essentially the seller of the property and a number of affiliates. David Yavel represents a company called Gros and Quaid, Inc., which is not to be confused with any of the IVG defendants, and he has asked and I have agreed that he could have up to two minutes of my time. I assume you're here defending the district court's disposition of this case. I am. Why was it right? It's right for a number of reasons. First of all, I don't believe that this Court should get to the issue of which circuit court was right. Gentry. We don't have to worry about who has the burden of proving for purpose of evasion? I don't think so. I'm prepared to argue that and I will, but this is a pure case of waiver. Is this a new brief?  Waiver? Waiver. Waiver, yes. Is that an issue you briefed and presented in your brief? Yes. We may not have, and I don't recall, I must say, in how much detail, but we definitely argued before Judge Prater that the issue had not been pled. I'm sorry, I'm failing. What issue had not been pled? The issue of whether Gentry or Atterbury involved a situation which was raised in the complaint. In other words, the complaint never, whether one feels that Atterbury is the law. Well, wait a minute. Didn't the complaint say that you are not entitled to the exemption, meaning you don't have to comply with any kind of disclosure, because your two-year period within which you were supposed to construct a house was inserted in the contract for purpose of evasion? No, sir, the complaint does not say that. It does not say that. What the complaint says is that our conduct was fraudulent. What the case involves, which also brings into play the HUD guidelines, but also brings into play the Atterbury case, is quite simple, and that is you need to claim the exemption as a bad actor. In effect, you have to. You did claim the exemption, didn't you? Yes, but we didn't claim it as a bad actor. We didn't claim the exemption in order to get out of a fraudulent act. The fraud which is being alleged is fraud in the construction of the houses, not fraud in claiming the exemption. The whole idea is the word evasion. It's not avoidance either. I understand. Isn't that a defense, actually, that you did not do it for purpose of evasion? No, we filed a 12B6. It was their duty in their complaint. Okay, you say the complaint claims that conduct was fraudulent. What conduct was fraudulent? That we promised to build the homes safely and with high-quality construction, and we didn't. That's a normal fraud claim. That's not a claim. But we're really talking about this 1703, I think it is, which is the Disclosure Act. 1702, I believe. 1702. So that's why you say it's waived because what they pled was fraud in the construction of the homes, and they never pled fraud to get the exemption. The fraud to get out of the statute. Yeah, okay. Now, that's critical. It doesn't seem to be consistent with the district court's decision in this case. I thought the district court. It's exactly what the district court said. Let me read you. In the oral argument before Judge Prater, there was a discussion about Gentry and Atterbury, and there was a discussion about whether the exemption that we claimed was claimed for the purpose of evasion of the Interstate Land Sales Act. And Judge Prater says, do you agree that you didn't plead that? And Mr. Carrero, counsel for the plaintiffs, replied as follows. Yes, I did not plead that, but that's easy enough, and a good faith amendment could be made to the complaint. By this response, the plaintiff's counsel recognized that it would be necessary to amend the complaint to put this issue of evasion into play. There is nothing in the complaint. That's sometimes easily done when it's brought up and argued, but he never did it, right? He never did it. And since he didn't seek leave to amend, and he didn't take any steps to amend, there is nothing whatsoever in the complaint which suggests in any way, shape, or form that we claimed the exemption under ILSA in order to evade the Act. So had we answered the complaint, the issue would have never come into play. Okay, but let's move, we have that in mind, let's move on to the next step. Yes. That the district judge said that because there was no fraud, there was no fraud, okay, I see. There was no fraud in connection with claiming the exemption. Yeah, okay, okay. I see where you're coming from. Otherwise, otherwise, anytime. You did assert at some time that you were entitled to the exemption. Pardon? You did plead at some point. Oh, yes. I, or we, are entitled to the exemption. Yes, we did say that. The Disclosure Act. Oh, yes. And we said why. We wrote a whole brief on it. Okay. And there's no problem in avoiding ILSA. No, that's what you're supposed to do. I think if you, ILSA was, I'm old enough as a lawyer, I was a practicing lawyer when the Interstate Land Sales Act was adopted. And I was very familiar with it because I'm a real estate lawyer. And I actually prepared documentation claiming exemptions under the Interstate Land Sales Act. So I have a good feel for it. All the articles that came out at the time said unequivocally that this is an anti-fraud statute. People are selling swamp land in Florida. They're selling desert land. They're selling land on which you could never build anything. And we don't like that. That is, as a federal government, as a Congress, we don't like that. And so what we're going to do is to require you to claim an exemption if an exemption can properly be claimed, or you're going to have to comply with the other requirements of the Interstate Land Sales Act. So if you were selling in swamp land in Florida and you couldn't build a house on it, you couldn't even get a building permit, then you couldn't claim the two-year exemption because you would know as a seller that you couldn't build a house there. Not only in two years, you couldn't build a house there ever. Do you know why two years was selected as a period? I believe I do. I don't have statutory history on that, but I believe I do. Typically, when you sell homes in a new subdivision, I represented a lot of developers. Typically, when you represent sellers of homes in a new development, all the permits at that time have not usually been obtained. They might build a sample, and then they start selling units, but there's no construction because they have to get preliminary approval, they have to get final approval, and it normally takes six to nine months to build a house. So what they do is figure, as the developer figures, that what is going to happen is it might take up to a year to get all the approval so you can really build these houses, and then six or nine months to finish them, and you'll be within the two-year period. One year would be clearly too short. All right. Thanks. Now... And if you don't do it except for things beyond your control, then you're not entitled to the... That's right. ...defense under the... This is a very strange case for an ILSA claim. All of the lots in the subdivision were sold pursuant to agreements which obligated the sellers to complete construction within two years. Each agreement of sale promised that specific performance was a remedy in the event of a default. All of the homes, in fact, were constructed within two years. All of the homes received certificates of occupancy within two years. Closing on every unit was held within two years. The alleged defects in the homes did not appear for five years after settlement, so that even the seller did not know about these problems until they surfaced five years later. All of the buyers of these homes or their successors are still living in the homes. No one has ever vacated a home. They continue to live in the homes and enjoy them. None of the buyers or their successors are suing for rescission. They want to keep their homes. None of the buyers are suing for specific performance because they're satisfied to keep their homes. What they're suing for is damages for defects in the construction of the houses. It didn't show up for five years. Under ILFDA, the plaintiff's attorney gets attorney's fees awarded? Yes. Okay, which he doesn't get in state court. That's right. So that's why we have that aspect of the claim here. Yes. We think it's a case of form shopping because we believe, although I can't swear to this because I didn't speak to Mr. Crerar about it, that he thought that he might get through the federal court system faster than the state court system. He would get an attorney's fee awarded. What? Excuse me. He would get an attorney's fee awarded. Yes. That's right. There would be relief under ILSA if they prevail. Yes. Which he won't get in state court. That's right. Okay. Well, isn't that the reason why he's in federal court? I never asked him. I mean, it seems to me that's the reason. It could very well be. I don't know. There's a so-called two-year exemption. We meet every requirement of the two-year exemption. That's really not an issue. The issue, in my view, is if you get to the conflict of the circuits between Gentry and Atterbury. Now, that has to do with who has the burden of proving the purpose of evasion? The answer to that, Your Honor, is partly. But you say before we never even get to that. I don't think you should get to that. If you were convinced that you don't get to it, I would waive the rest of my argument. You say we don't get to it because the issue was actually waived by Mr. Carrero. Yes. But we will get to hear his view. Would it be possible to reserve time? Supposedly he is right and the issue is not waived. If the issue is not waived, then I have an argument. Okay. We read the argument in your brief, and I think we understand it fully. Well, thank you. Could I just say? Give you a minute. Just give me one minute. Judge Prater faced this issue squarely. And what she said was that the Atterbury case, which is what we rely on, more closely aligns with the anti-fraud purposes of ILSA than does Atterbury. She also said. That is Gentry. Pardon? He said Atterbury for both. Oh, Atterbury then Gentry. I'm sorry. Thank you, Your Honor. But she also said something more important. She said that Gentry is under-inclusive because under Gentry, you could have any number of reasons for claiming that there was an exemption. If any one of those reasons is valid, then you're out from under. You have a legitimate business purpose. So you can have a legitimate business purpose, which Gentry conceded could include the saving of time and money in complying with the other provisions of ILSA. And Gentry said that was good enough. We're going to keep that in mind. And we have another person that's arguing. Thank you. Okay. Did I use 13? Sir? Yes. You sure did. Okay. Actually, 14. That was perfect then. Thank you very much. Yes, sir. Mr. Yarbrough? Yable. Yable. May it please the Court, David Yable on behalf of Gross & Quaid, Inc. It's also known as Century 21, so I'll refer to Century 21, as Your Honors are well aware. My client was the broker and agent for the developer. Pursuant to ILSA, my client falls within the prohibited acts but also is entitled to the exemption for the same rationale as the developer. Being the broker and agent does not prohibit that exemption, the status of being the broker and agent. I don't think the statute is exactly clear as to that, but there's no case law. It hasn't been argued that I'm not entitled to the exemption just based on the status. So in that respect, I think there can't be any argument against that. That's really all I wanted to address, Your Honors. But you did bring up the issue of attorney's fees, and I would like to address that, because there are state law claims of fraud, and I think there are claims for violations of Pennsylvania's Unfair Trade Practices Act, which may lead to attorney's fees, trouble damages, et cetera, which are pending in state court. So I just wanted to bring that to Your Honor's attention as well. Thank you, sir. Thank you very much. Mr. Carrero? Thank you, Your Honor. Mr. Carrero, speaking for myself, I would like you to point to the part of the complaint where you assert a claim, a claim under the Disclosure Act in this case, where you say that the Indian Valley has claimed the exemption for purpose of evasion. I did not, Your Honor. Sir? I did not, Your Honor. No, no, but I would like you to tell me where in the complaint it is. He says you waived that. It's not pled in the complaint, Your Honor, because the exemption is their defense. They're the ones that are exempt. All right. It's in their complaint? It's in their position. It's in the 12b-6. No answer has been filed. No answer has been filed. So for the reasons that I know. All right. No answer has been filed. All right. They filed a motion to dismiss. Correct. You responded. Responded. There's a motion to dismiss that you're not entitled to the exemption. That was one reason. The other reason was that the exemption, or rather the contract, did not obligate the seller to complete the houses within two years. And the reason for that is in paragraph 17 of the agreements of sale, the seller had the right to not construct the houses for any reason. But the obligation to grant specific performance overrode the other provisions of the contract. I don't agree with that, Your Honor. Well, there's language that in effect says that. The specific performance section, which is in the deals with delay, and, yes, it says notwithstanding anything else, the buyer has the right to specific performance. It says that. But later on, under the seller's obligation, the seller had the right for any reason, not any reason, to not construct. Yeah, but you've got the other provision that says it overrides it. Well, then under Pennsylvania law, one would have to ask, what is the purpose of this not construct for any reason? It had a reason to be there. And the seller clearly wanted the right to not construct if it chose not to. And that would cover situations that were beyond the seller's control. No, Your Honor. I respectfully disagree with that. Because that enumerated, that provision, along with several other enumerated provisions in the contract, deal with completion. Paragraph 17 of the complaint addresses two scenarios. So the phrase you're talking about is the phrase in the contract that says not construct? It's in the contract. Not construct. If for any reason not construct. I have a question. Could you give me that complete sentence? Paragraph 17, Your Honor. Conditions to seller's obligation. If seller for any reason cannot construct. Go ahead. Or complete the premises due to any present or future rules, regulations, or restrictions, federal, state, municipal, government, governments, complete for premises for unanticipated surface, or. So not construct is qualified, isn't it? I would say not, Your Honor. That's pretty qualified to me. There is, it's in the disjunctive. That paragraph is in the disjunctive. Any reason to not construct. Or not complete. So once the seller had engaged in the acts of constructing these homes, their limitation would be to some extent circumstances which would constitute or comply with Pennsylvania rules. Then we have to look at what you're claiming under the circumstances where all the units were completed within two years. No, Your Honor. I respectfully disagree. You're saying it's in the disjunctive. But if they were looking for a situation where they could escape the contract, wouldn't that be evident in their failure to construct when they got them all done? They did construct. It's all done. But under the case law interpreting 1702 and the unconditional obligation, we're looking at what happened at the, what was the contract requiring the seller to do at the time that the contract was enacted. Right. And they did it. Well, no, but the fact that it was. They did it. So why is Congress concerned about a case like that where they did it? Because. They were concerned about cases where the land was being sold that couldn't be built on. And here you have a contract where you say, okay, this language is a little vague. But with hindsight, we look at it and we saw that they built them all. So what are you complaining about? What I'm complaining about is, Your Honor, that at the time that these agreements of sale were executed, they were executed based upon representations about the quality of what the buyers were going to buy. All right. And that's not this aspect of the lawsuit. I'm not clear on that, Your Honor. This aspect of the lawsuit is under the Interstate Land Development Act. Your claim for shoddy workmanship, if it's a valid claim, is not under this statute. It's under state law. So I feel like you're trying to pull your other causes of action into this one for, to stay in federal court to get a better attorney's fee. But that's the only thing I see. Well, no. No, Your Honor. I respectfully can't disagree. What happened here was there was a marketing scheme, a common promotional plan, this is our allegations, that the sellers in this case engaged in, which is what the Act addresses, that these homes were going to contain certain types of, were going to be of a certain quality. Let me make your point. I see your red light. I will interpret what you're saying from what you said here and from your brief. Thank you, Your Honor. Mr. Carrillo, thank you very much. Thank you, Mr. Bass. Thank you. So you're able to take the case under your advisement. Thank you.